United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MIKE PACIGA,

Plaintiff,

v.

INVUITY INC., PHILIP SAWYER and JAMES H. MACKANESS,

Defendants.

_______________________________________/

No. C 17-01005 JSW

**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND AND DENYING PLAINTIFF'S MOTION TO STRIKE**

Now before the Court is the motion to dismiss filed by defendants Invuity, Inc., Philip Sawyer, and James H. Mackaness (collectively "Invuity" or "Defendants"). Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the Court GRANTS Defendants' motion to dismiss with leave to amend and DENIES Plaintiff's motion to strike.

**BACKGROUND**

On February 27, 2017, Plaintiff Mike Paciga, individually and on behalf of others similarly situated, filed a complaint against Invuity and its officers for violation of Sections 10(b) and 20(a) of the Security Exchange Act of 1934, and Rule 10b-5 promulgated thereunder. After lead plaintiff and lead counsel were selected, Plaintiff filed an amended complaint. On September 14, 2017,

Defendants filed a motion to dismiss the first amended complaint.

Defendant Invuity is a medical technology company that develops, markets, and sells single-use and reusable medical technology for use during surgery. The company's focus is advanced photonics products that enable surgeons to have better visualization and illumination of the surgical cavity while performing minimally-invasive and minimal-access procedures. (First Amended Complaint ("FAC") ¶¶ 5, 15.) Defendant Philip Sawyer was the President and Chief Executive Officer ("CEO") of Invuity and a member of its board of directors. (*Id.* at ¶ 6.) Defendant James H. Mackaness was the company's Chief Financial Officer ("CFO"). (*Id.* at ¶ 7.) Plaintiff alleges that the company and its officers who were privy to confidential and proprietary information about the company's operations, finances, and present and future business prospects, had a duty to disseminate accurate and truthful information, but instead made material misrepresentations and participated in a fraudulent scheme to deceive the investing public. (*Id.* at ¶¶ 10-14.)

The Court will address additional facts as necessary in the remainder of this order.

## ANALYSIS

### A. Applicable Legal Standards on Motion to Dismiss.

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

United States District Court
For the Northern District of California

556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted). However, documents subject to judicial notice may be considered on a motion to dismiss. In doing so, the Court does not convert a motion to dismiss to one for summary judgment. *See Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).

Federal Rule of Civil Procedure 8 requires plaintiffs to "plead a short and plain statement of the elements of his or her claim." *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000). Rule 8 requires each allegation to be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Where the allegations in a complaint are "argumentative, prolix, replete with redundancy and largely irrelevant," the complaint is properly dismissed for failure to comply with Rule 8(a). *McHenry v. Renne*, 84 F.3d 1172, 1177, 1178-79 (9th Cir. 1996); *see also Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 673-74 (9th Cir. 1981) (affirming dismissal of complaint that was " 'verbose, confusing and almost entirely conclusory'"). "Something labeled a complaint but . . . prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint," and "impose[s] unfair burdens on litigants and judges." *McHenry*, 84 F.3d at 1179-80.

Where a plaintiff alleges fraud, however, Rule 9(b) requires the plaintiff to state with particularity the circumstances constituting fraud. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-49 (9th Cir. 1994) (en banc) (superseded by the Private Securities Litigation Reform Act ("PSLRA") on other grounds). A plaintiff averring fraud must plead with particularity the circumstances constituting fraud. *See* Fed. R. Civ. P. 9(b). Particularity under Rule 9(b) requires the plaintiff to plead the "who, what, when, where, and how" of the misconduct alleged. *See Kearns*

United States District Court
For the Northern District of California

*v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). In the securities context, the pleading requirements are even more stringent and require that "the particular circumstances indicating falseness of the defendant's statements to be pled, specifically, 'an explanation as to why the statement or omission complained of was false or misleading.'" *In re Intuitive Surgical Sec. Litig*, 65 F. Supp. 3d 821, 830 (N.D. Cal. Aug. 21, 2014) (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1548).

The Rule 9(b) requirement "has long been applied to securities complaints." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009). "At the pleading stage, a complaint stating claims under section 10(b) and Rule 10b-5 must satisfy the dual pleading requirements of . . . Rule 9(b) and the PSLRA." *Id.* The PSLRA requires that "a complaint 'plead with particularity both falsity and scienter.'" *Id.* (quoting *Gompper v. VISX*, 298 F.3d 893, 895 (9th Cir. 2002), in turn quoting *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001)).

Under the PSLRA, actions based on allegations of material misstatements or omissions must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). In order adequately to plead scienter, the PSLRA requires that the plaintiff "'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Zucco Partners*, 552 F.3d at 991 (quoting 15 U.S.C. § 78u-4(b)(2)). If the allegations are insufficient to state a claim, a court should grant leave to amend, "unless it is clear that the complaint could not be saved by any amendment." *Id.* at 989 (quoting *Livid Holdings Ltd. v. Solomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005)).

**B. Sufficiency of Allegations of Rule 10(b) Violation.**

Section 10(b) of the Exchange Act provides, in part, that it is unlawful "to use or employ in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). Rule 10b-5, promulgated under Section 10(b), makes it unlawful for any person to use interstate commerce: (a)

to employ any device, scheme, or artifice to defraud; (b) to make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b-5.

For a claim under Section 10(b) and Rule 10b-5 to be actionable, a plaintiff must allege: (1) a misrepresentation or omission; (2) of material fact; (3) made with scienter; (4) on which the plaintiff justifiably relied; (5) that proximately caused the alleged loss. *See Binder v. Gillespie*, 184 F.3d 1059, 1063 (9th Cir. 1999). A complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(2). In order to avoid having the action dismissed, a plaintiff must "plead with particularity both falsity and scienter." *Ronconi*, 253 F.3d at 429.

To assist the Court in determining whether a plaintiff has satisfied this heightened pleading standard, "the Supreme Court has provided three points of instruction: (1) 'courts must, as with any [12(b)(6)] motion to dismiss . . ., accept all factual allegations in the complaint as true'; (2) 'courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss'; and (3) 'in determining whether the pleaded facts give rise to a strong inference of scienter, the court must take into account plausible opposing inference.'" *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014) (citing *Telltabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007)).

In its motion to dismiss, Defendants contend that Plaintiff fails to satisfy the heightened pleading requirements under the PSLRA. In particular, Defendants argue that: (1) Plaintiff has failed to plead with particularity that Defendants made false or misleading statements; and (2) Plaintiff has failed to plead with particularity facts demonstrating a strong inference of scienter.

**1. Falsity and Materiality of Statements.**

The PSLRA requires that a plaintiff allege with the requisite particularity each statement alleged to be false or misleading, the reason or reasons why the statement was false or misleading, and if those allegations are made on information and belief, all facts on which that belief is formed. *See* 15 U.S.C. § 78u-4(b)(1)(B); *see also Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1134 (9th Cir. 2004). To be actionable under Section 10(b) and Rule 10b-5, an alleged omission must render some affirmative public statement misleading as to a material fact. In order for an omission to be misleading, "it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *See Brody v. Transitional Hospitals Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (citing *McCormick v. The Fund American Cos.*, 26 F.3d 869, 880 (9th Cir. 1994)). To fulfill the materiality requirement, "'there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.'" *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).

In this matter, Plaintiff alleges that Defendants made false and misleading statements and omissions about: (1) reaching a plateau in sales after the initial sale to a new account; (2) revenue guidance and sales growth predictions; and (3) generalized statements of optimism.

Plaintiff contends that during the class period Invuity falsely claimed that the company's sales growth had not plateaued. (FAC ¶¶ 39, 62.) Plaintiff proffers the opinion of one confidential witness who left Invuity when, he claims, his own sales numbers plateaued. (*Id.* at ¶ 155.) This witness, identified as an Area Sales Manager, worked at Invuity until August 2016. (*Id.* at ¶ 154.) The timing of the sales of this single witness are unclear and it is similarly unclear whether those observations were shared more generally throughout the company. If this witness had observed a plateau in his sales at the end of his tenure in the third quarter of 2016, explaining his departure then, there is no evidence to support the proposition that earlier statements made by Invuity were false when made. Second, as Defendants contend, the pattern this confidential witnesses observed would, rather than a plateau, be more accurately described as an observation that after an initial order for a

new account was made, the second order for the same account would typically be for a lower volume of sales. (*See id.* at ¶¶ 144, 152, 157.) It is not clear from the witness accounts as stated in the amended complaint whether that pattern would result in a plateau for all future sales. Rather, as was actually disclosed by Defendants, whereas the first order would normally include the purchase of both metal reusable retractors and disposables, a second order would consist of disposables only. (*See id.* at ¶¶ 92, 98, 100, 104.) It is not clear from the allegations made in the complaint about the prospects for future depth in current customer sales were false when made on the basis that there was an observed (and disclosed) dip in second order sales volume. There are no allegations that all subsequent orders were likewise smaller, and the guidance given by Defendants as alleged in the complaint was that the company intended to add new customers as well as to sell more in depth to existing customers. (*See id.* at ¶¶ 39, 61.) It is, as Defendants argue, "entirely possible that Invuity could achieve its projected growth even as new customers generally had smaller second orders, and the Complaint is devoid of facts suggesting otherwise." (Motion at 10-11.) The Court finds, as currently pled, Plaintiff has not supported his allegation that Defendants falsely claimed that the company's sales growth had not plateaued.

Plaintiff also alleges that Defendants made false statements about revenue guidance and sales growth predictions more generally. In this regard, Plaintiff contends that Defendants misrepresented that the Company's sales growth was on track and going according to plan. Plaintiff alleges that Invuity had announced its strategy to add new customers and to go "deeper" into existing accounts, indicating its intention to increase sales to existing customers. (FAC ¶¶ 33, 37, 39, 57, 58-61.) Plaintiff alleges that the statements were false or misleading because Defendants engaged in a "scheme" of "offering undisclosed discounts" to "artificially increase sales of disposables" and "temporarily mask Invuity's inability to grow its active account revenue organically." (*Id.* at ¶ 42; *see also* ¶¶ 51, 66.) To support this contention, Plaintiff proffers a second confidential witness who testifies that, on occasion, Invuity gave free retractors to customers or two-for-one deals on retractors to customers who had purchased a large number of disposables. (*Id.* at ¶ 147.) However, there is no factual allegation to support the conclusion that incentives or special deals offered by Invuity artificially inflated Invuity's actual sales numbers for disposables. There is no allegation

that the incentives had any material impact on the volume of sales of the resulting orders for customers who were given incentives or special pricing. (*Id.* at ¶¶ 51, 147.) Accordingly, the mere allegations that special incentives were offered does not support the conclusion that the practice had the effect of artificially inflating Invuity's sales numbers. *See, e.g., In re Cerner Corp. Sec. Litig.*, 425 F.3d 1079, 1082, 1084 (8th Cir. 2005) (holding that allegations that the company had offered substantial discounts on products was inadequate to form the basis of a claim without any indication of the amount or extent of the impact of the discounts).

Plaintiff also alleges that Defendants made false statements about their cash reserves, which, Plaintiff contends, were contradicted by the fact that Defendants raised capital before the market could learn "the truth." (FAC ¶ 129 ("[t]he timing of the secondary offering undermines Defendants' contention that the Company was expecting to generate sufficient revenue in the latter half of 2016 to fund operations through 2017. The timing of the cash raise indicates that, by no later than July 1, 2016, Defendants knew the Company's active accounts were subject to a maturation cycle that did not match prior assumptions."). There is, however, no allegation in the complaint or evidence to support the contention that the timing for raising capital indicates that the representations that Invuity had $46.3 million in cash and a $7.5 million line of credit as of December 2015 were false when made. (*Id.* at ¶ 118.) Defendants argue that the company "chose to conduct the offering because favorable market conditions made it a good time to raise capital." (Reply at 5.) There is no factual allegation or evidence to support the contention that the company's specific representations regarding capital reserves and explanation for timing of the offering were false when made.

Lastly, Plaintiff argues that Defendants' generalized statements of optimism were false and misleading. Plaintiff alleges that statements regarding Invuity's general positive business opinions such as statements that Invuity had "established the Company's ability to execute against an aggressive growth model"; Invuity had "excellent progress and success"; was "just scratching the surface"; seeing "a lot of opportunity"' and "hitting on both cylinders" were false and misleading statements. (FAC ¶¶ 32, 33, 35, 61, 37.)

United States District Court
For the Northern District of California

Regardless of the ultimate veracity of the company's enthusiasm about its financial future, these types of representations are not actionable as a matter of law as business puffery. *See In re Cutera Sec. Litig.*, 610 F.3d 1103, 1110 (9th Cir. 2010) ("[M]ildly optimistic, subjective assessment hardly amounts to a securities violation."); *see also In re Cisco Sys., Inc. Sec. Litig.*, 2013 WL 1402788, at *13 (N.D. Cal. March 29, 2013) (rejecting as inactionable terms such as "hitting on all cylinders," "exceeding expectations," and "on fire in terms of our growth[.]"). Courts have found these types of vague expressions of optimism to "corporate puffery" on which no reasonable investor would rely. *Id.* The representations at issue here are similarly inactionable.

Accordingly, the Court finds that the complaint as it is currently pled is subject to dismissal for failure to plead falsity with the requisite particularity under the PSLRA.

**2. Scienter**

Plaintiff's failure to plead falsity with requisite particularity renders it unnecessary for the Court to consider the sufficiency of the allegations of scienter. However, the Court finds, as an alternative, that the first amended complaint is subject to dismissal for failure adequately to plead scienter.

In order to plead scienter, the PSLRA requires that Plaintiff "'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Zucco Partners*, 552 F.3d at 991 (quoting 15 U.S.C. § 78u-4(b)(2)). The requisite state of mind is "a mental state that not only covers 'intent to deceive, manipulate, or defraud,' but also 'deliberate recklessness.'" *In re Quality Sys. Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (quoting *Schueneman v. Arena Pharms.*, 840 F.3d 698, 705 (9th Cir. 2016)). A complaint must allege that the defendants made false and misleading statements either knowing them to be false or with deliberate indifference as to their falsity. *Zucco Partners*, 552 F.3d at 991. It is not enough that the plaintiff merely allege facts "from which an inference of scienter rationally could be drawn." *Telltabs*, 551 U.S. at 323. Rather, the plaintiff must alleged "with particularity facts that give rise to a strong – i.e., a powerful or cogent – inference." *Id.* In order to determine whether a plaintiff has met this burden, the court must examine whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter. *Id.* at 324. The court "'must consider plausible, nonculpable explanations for the

defendant's conduct,' not only inferences favoring the plaintiff." *In re Cisco Sys.*, 2013 WL 1402788, at *7 (citing *Telltabs*, 551 U.S. at 324; *Zucco Partners*, 552 F.3d at 991). The reviewing court must determine both whether any of the allegations, standing alone is sufficient to create a strong inference of scienter and also, if no allegation alone is sufficient, the court then considers the "allegations holistically to determine whether they create a strong inference of scienter taken together." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d at 1056.

Plaintiff contends that the combination of the small size of the company and its hands-on management style and officers' awareness of operational details would give the individual Invuity officers inside knowledge of real-time sales data and revenue. There is no dispute that the complaint adequately alleges that officers at Invuity had access to real-time sales data and were involved in the specific programs provided by the Company to promote sales. (FAC ¶¶ 41, 65, 104, 110, 141-43, 146-51, 159-63.) However, there is no evidentiary support or factual allegations to establish a strong inference of scienter that from the sales data and specific programs, the officers learned any information that contradicted their public statements. The complaint does not address what specific negative information officers knew about its sales data or core operations that was sufficiently troubling that the officers must have known that their revenue guidance would not be met. *See e.g., Lipton v. PathoGenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002) (holding that conclusory allegations that defendants had access to internal reports of data demonstrating a decline in sales was insufficient to support a claim for scienter where allegations lacked detail about the content of the reports or purported data). As has already been determined, the Court finds no support for the contention that the officers' statements about Invuity's revenue growth from the end of 2015 through mid-2016 were false or misleading at the time they were made. There was disclosure that the company generally experienced a dip in sales from the first order to the second and the emphasis on going deeper into existing customers is not controverted. The allegations regarding the true present statements of the company's officers without specific facts to the contrary about the sales data and without any allegation of specific knowledge of the falsity of the statements does not create an inference of scienter.

Lastly, Plaintiff alleges that the stock sales by CEO Philip Sawyer and Vice President of Sales Bob Gerberich support a strong inference of scienter. Plaintiff alleges that "[w]hile in possession of on-public adverse information regarding Invuity's stagnating sales in mature active accounts, Defendant Sawyer took advantage of the artificial inflation of Invuity's stock price caused by Defendants' misrepresentations and omissions." (FAC ¶ 131.) Plaintiff further alleges that "non-party Gerberich followed Defendant Sawyer's lead and unloaded personally-held shares in a similarly suspicious manner." (*Id.* at ¶ 135.)

Unusual or suspicious stock sales by corporate insiders may constitute circumstantial evidence of scienter. "Although 'unusual' or 'suspicious' stock sales by corporate insiders may constitute circumstantial evidence of scienter, . . . insider trading is suspicious only when it is dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (internal quotations and citations omitted). "To evaluate suspiciousness of stock sales," the Court considers "*inter alia*, three factors: (1) the amount and percentage of shares sold; (2) timing of the sales; and (3) consistency with prior trading history." *In re Quality Sys. Inc. Sec. Litig.*, 865 F.3d at 1146 (citation omitted). Stock sales by insiders "only give rise to an inference of scienter when they are 'dramatically out of line with prior trading practices at times calculates to maximize the personal benefit from undisclosed inside information." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1066-67 (9th Cir. 2008) (citations omitted).

Here, Sawyer and Gerberich sold stock amounting to approximately 9% and 13% of their total holdings respectively. Courts have found such small percentages of overall holdings to be insufficient to support an inference of scienter. *See, e.g., id.* at 1067 (holding that CEO's sales of "only 37%" of holdings was insufficient to raise a strong inference of scienter); *see also Ronconi*, 253 F.3d at 435 (holding that sales of 10% and 17% of holdings was insufficient to raise inference of scienter). In addition, the stocks were sold pursuant to a pre-existing and pre-determined trading plan which may "rebut [] an inference of scienter." *Metzler*, 540 F.3d at 1067 n.11 (citing *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1427-28 (9th Cir. 1994)) (sales based on pre-determined trading plan coupled with small sales amounts rebutted allegations of scienter)). Lastly,

United States District Court
For the Northern District of California

the fact that named defendant James Mackaness actually purchased Invuity stock during the Class Period appears to undermine the contention that Defendants had the requisite intention to engage in an intentional scheme to inflate the stock price. *See Ronconi*, 253 F.3d at 436 ("One insider's well timed sales do not support the 'strong inference' required by the statute where the rest of the equally knowledgeable insiders act in a way inconsistent with the inference that the favorable characterizations of the company's affairs were known to be false when made").

Accordingly, the Court finds that the complaint as it is currently pled is subject to dismissal for failure to plead sufficient facts to generate a strong inference of scienter.

**C. Motion to Strike Exhibit One from Declaration of Joni Ostler.**

Plaintiff requests that the Court strike the addition of a visual aid created by Defendants' counsel of the selected pages of the amended complaint with highlighted portions alleged by counsel to be vague statements of corporate optimism and forward-looking statements. Plaintiff contends that the document is not judicially noticeable and serves to extend the limited number of pages of the opposition brief. Defendants have not requested that the Court take judicial notice of the exhibit. Further, the Court finds the visual aid merely that and not an extension of the pages retained for attorney argument. Accordingly, Plaintiff's motion to strike the exhibit is DENIED.[1]

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss with leave to amend and DENIES Plaintiff's motion to strike. Plaintiff shall file and serve an amended complaint or a statement that no such amended complaint shall be filed within twenty days of the date of this Order, and Defendants shall file their response within twenty days thereafter.

**IT IS SO ORDERED.**

Dated: September 26, 2018

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

[1] Although Defendants' contention that the amended complaint violates the prohibition on puzzle pleading was withdrawn, the Court finds that the amended complaint is not an exemplar of concision. The numerous pages of large block quotes even with the highlighted portions marked as objectionable is challenging for the Court to follow. Plaintiff shall be granted leave to amend and, should he so elect, is admonished to approach the second amended complaint with an eye toward precision.